UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| **RONNIE RUTHERFORD,** ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> **DR. GALPRIN,** *Doctor for Quality* ) <br> *Assurance Med (Allen Co. Jail),* ) <br> ) <br> Defendant. ) | Case No. 1:21-cv-00401-SLC |

## OPINION AND ORDER

Before the Court is Defendant Dr. Galperin's ("Defendant") motion for summary judgment, along with a supporting memorandum, a statement of undisputed material facts, and exhibits. (ECF 59, 60, 60-1 to 60-5). On July 28, 2023, Plaintiff filed a response brief to the motion, along with a statement of genuine disputes of material facts, and exhibits. (ECF 65, 65-1 to 65-3). Defendant filed a reply on August 8, 2023. (ECF 66). However, because Defendant had not filed a reply brief that complied with Local Rule 56-1, the Court ordered Defendant to file an amended reply on or before February 20, 2024, and struck the previously filed reply from the record. (ECF 67). Defendant filed the amended reply and a separate statement of additional material facts on February 20, 2024 (ECF 71, 72), making the matter ripe for adjudication.[1]

For the following reasons, the Court will grant Defendant's motion for summary judgment.[2]

---

[1] Plaintiff also re-filed his response brief to the motion for summary judgment along with a separate statement of genuine disputes of material facts and exhibits (ECF 68-70), unprompted. Because those documents were filed without leave of Court, they will be stricken.

[2] Subject matter jurisdiction under 28 U.S.C. § 1331 is proper in this Court. Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting. (ECF 33).

## I. FACTUAL AND PROCEDURAL BACKGROUND[3]

Plaintiff arrived at the Allen County Jail ("the jail") at or around July 16, 2021, as a pretrial detainee, where he would stay until November 2021 and leave as a federal inmate (ECF 4 at 1; ECF 65-1 ¶¶ 3, 29; *see* ECF 72 ¶ 1). During an initial medical assessment completed upon his arrival, Plaintiff notified the medical staff of his ongoing medical conditions and medications. (ECF 65-1 ¶ 3; ECF 72 ¶ 1).[4] Notably, Plaintiff informed the medical staff of his health complications stemming from a past infection with COVID and that he used a CPAP machine. (ECF 65-1 ¶ 3; ECF 72 ¶ 2).

At the time of Plaintiff's arrival at the jail, the medical staff contacted the doctor on call, Dr. John Lee, to determine which medications to order for Plaintiff. (ECF 65-1 ¶ 3). Dr. Lee ordered several medications and approved Plaintiff's use of a CPAP machine on July 17, 2021. (ECF 65-1 ¶ 3; ECF 60-5 at 1). When the medical staff informed Plaintiff he could use his CPAP machine, Plaintiff initially refused to use it because he did not want to be housed alone. (ECF 65-1 ¶ 5).

In the following weeks, the medical staff obtained Plaintiff's medical records pertaining to the care he received before his admission at the jail, including documentation confirming the complications he experienced after a significant episode of COVID in March 2020. (*Id.* ¶ 4). Specifically, Plaintiff contracted COVID and experienced side effects from the vaccine, which landed him in the hospital for over a month, as a result of which he had been experiencing fatigue, tremors, restless leg syndrome, and memory loss. (*Id.* ¶¶ 4, 31). At the time, his physicians informed him that he was likely to have symptoms for the rest of his life. (*Id.* ¶ 33).

---

[3] For summary judgment purposes, the facts are recited in the light most favorable to Plaintiff, the nonmoving party. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

[4] Quality Correctional Care handles the medical treatments at the jail.

Despite those symptoms, however, a CT scan conducted in May 2021—before his incarceration—revealed that he was improving, though he needed to follow-up with another scan within the next six to twelve months. (*Id.* ¶ 4).

Plaintiff experienced health problems requiring him to visit the medical staff at the jail soon after his intake. On July 20, 2021, during an assessment with the jail's medical staff, Plaintiff requested a second mat to alleviate back pain caused by gout. (*Id.* ¶ 6). The request was communicated to Defendant, who approved Plaintiff for an additional cotton blanket to use for support and coverage. (*Id.*). This marked the first time Defendant became involved in Plaintiff's care. Ten days later, on July 30, 2021, Plaintiff visited the medical staff again, this time because he experienced knee pain. (*Id.* ¶ 5). He requested access to a compression sleeve, but Defendant approved the use of a knee sleeve instead. (*Id.*). In parallel to his health problems, Plaintiff began requesting to use his CPAP machine on July 25, 2021, but could not obtain consistent access to the CPAP machine or distilled water. (ECF 72 ¶¶ 5, 6; ECF 65-3 at 10, 24). He complained from July 2021 to October 2021 about the issue. (ECF 72 ¶ 5; ECF 63-3 at 10, 24).

Plaintiff's health problems continued into August 2021. On August 4, 2021, he visited the medical staff again and was assessed by a nurse for complaints of a cough and a runny nose. (ECF 65-1 ¶ 7). The nurse contacted Defendant, who approved an order of Mucinex for a week. (*Id.*). On August 12, 2021, Plaintiff returned to the medical unit because he believed he had a fracture of his right pinky finger. (*Id.* ¶ 8). A nurse reviewed Plaintiff's finger, observed that Plaintiff was wearing a splint, noted that the finger was straight with no swelling, and informed Dr. Michael Person, the Chief Medical Director for Quality Correctional Care, of her findings. (*Id.*). Dr. Person ordered that the splint with metal pieces be confiscated. (*Id.*).

Plaintiff's gout issues surfaced again, and he returned to the medical unit with complaints of an episode of gout on August 27, 2021. (*Id.* ¶ 9). He reported to the medical staff that he previously used Prednisone to help with gout issues. (*Id.*). After a nurse examined him and contacted Defendant, Defendant ordered Plaintiff a five-day supply of Prednisone to address the gout issue, given that Prednisone was a medication often ordered for gout flare-ups in Defendant's experience and medical knowledge. (*Id.*).

Plaintiff continued to experience knee swelling and discomfort attributed to his gout, which led him to visit the medical staff on September 6, 2021. (*Id.* ¶ 10). This visit marked the first time that Defendant and Plaintiff met face-to-face. (*Id.*). Plaintiff informed Defendant that, before his incarceration at the jail, he would see an orthopedic specialist to drain fluid from his knee and that Prednisone tapers were effective to manage his gout flare-ups. (*Id.*). Defendant confirmed that Plaintiff had gout, ordered a Prednisone taper, and ordered that Plaintiff be scheduled for a visit at an off-site orthopedist. (*Id.*). The referral to the orthopedic specialist required approval from the United States Marshals Service ("USMS") because Plaintiff was incarcerated as a federal offender at the time. (*Id.* ¶ 11). Following the visit, Defendant completed and submitted to the USMS a "transport/referral" request, which was subsequently approved. (*Id.*). The visit to the orthopedist was scheduled in November 2021. (*Id.*).

Defendant followed up with Plaintiff on September 16, 2021, at which point Plaintiff continued to complain about his back discomfort. (*Id.* ¶ 12). Plaintiff expressed pain, but no incontinence, so Defendant ordered an eight-day supply of Tylenol. (*Id.*). Defendant saw Plaintiff again on October 7, 2021, for a follow-up, during which Plaintiff continued to present with back pain which was "killing him." (*Id.* ¶ 13). Defendant ordered more Prednisone to

alleviate the pain while Plaintiff was waiting for his upcoming November 2021 appointment with the orthopedist. (*Id.*).

Plaintiff returned to the medical unit for a follow-up with Defendant on October 14, 2021. (*Id.* ¶ 14). The two discussed Plaintiff's medical history and past treatments, including Plaintiff's history with COVID and related hospitalizations. (*Id.*). During the follow-up, Defendant observed that Plaintiff's blood pressure was slightly elevated, which prompted Defendant to order that Plaintiff's blood pressure be checked regularly. (*Id.*). Defendant also indicated that he wanted to refer Plaintiff to an off-site pulmonologist. (*Id.*). However, Defendant needed approval from the USMS, again due to Plaintiff's status as a federal inmate. (*Id.* ¶ 21).

Plaintiff visited an off-site orthopedist, Dr. Jerald Cooper, on November 1, 2021. (*Id.* ¶ 15). Dr. Cooper noted that Plaintiff was overweight with a body mass index (BMI) of 33 and acknowledged Plaintiff's surgical history and gout. (*Id.*). He drained Plaintiff's knee and gave Plaintiff an injection of Depo-Medrol and Lidocaine. (*Id.*). He also instructed Plaintiff to decrease his BMI. (*Id.*).

Plaintiff followed-up again with Defendant on November 15, 2021, at which time he complained about a gout flare-up. (*Id.* ¶ 16). Plaintiff requested a prescription of Prednisone—which he insisted helped with his gout flares—and Defendant approved the request, ordering a tapered dose of Prednisone to be administered over ten days. (*Id.*). Plaintiff also reported that he was having issues with receiving a CPAP machine from the custody staff. (*Id.* ¶ 22). In response, Defendant entered a note in Plaintiff's medical chart that day, reiterating that Plaintiff was to have continued access to his CPAP machine. (*Id.*).

In the meantime, Defendant received approval from the USMS for Plaintiff to see an off-site pulmonologist. (*Id.* ¶¶ 17, 25). Plaintiff was transferred from the jail to Corrections Center

of Northwest Ohio in late November 2021, and thus, the medical staff was unable to schedule Plaintiff's appointment with the pulmonologist. (*Id.*; *see* ECF 12).

At the time proceeding *pro se*,[5] Plaintiff filed suit under 42 U.S.C. § 1983 against Defendant, Allen County Sheriff David Gladieux, and Correctional Officers Casey and Peterson on October 25, 2021 (ECF 1), alleging that he did not receive constitutionally adequate medical care when he was detained at the jail. On November 1, 2021, the Court issued an Opinion and Order, granting Plaintiff leave to proceed against Defendant in his individual capacity for compensatory and punitive damages for denying Plaintiff constitutionally adequate medical treatment for his gout, kidney failure, severely damaged lungs, "prediahcetics,"[6] brain bleeding, heart damage, nerve damage, and memory loss in violation of the Fourteenth Amendment. (ECF 4 at 3). The Court further allowed Plaintiff to proceed against Defendant in his official capacity for permanent injunctive relief to obtain constitutionally adequate medical treatment for those same health conditions under the Fourteenth Amendment. (*Id.*). However, the Court dismissed Plaintiff's claims against Gladieux, Casey, and Peterson, and all other claims filed by Plaintiff. (ECF 4).

Now before the Court is Defendant's motion for summary judgment, filed on May 15, 2023, along with a memorandum, a statement of undisputed material facts, and exhibits. (ECF 59, 60, 60-1 to 60-5). Plaintiff filed a response, via counsel, on July 28, 2023 (ECF 65), to which Defendant replied on August 8, 2023 (ECF 66). As stated, the Court ordered Defendant to file a

---

[5] On August 30, 2022, Attorney Nicholas Wallace entered an appearance on behalf of Plaintiff after graciously agreeing to represent Plaintiff under the District's volunteer attorney program. (ECF 42, 44).

[6] Plaintiff clarified—and the parties agree—that this term refers to "pre-diabetes." (ECF 59 at 1 n.1; ECF 60-4 at 19).

reply that complied with Local Rule 56-1 (ECF 67), which Defendant did on February 20, 2024 (ECF 71-72).

## II. LEGAL STANDARD

Summary judgment may be granted only if there are no disputed genuine issues of material fact. *Payne,* 337 F.3d at 770; Fed. R. Civ. P. 56(a). When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Payne*, 337 F.3d at 770 (citations omitted). The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 604 F.3d 490, 507 (7th Cir. 2010) (quoting *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994)). If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770.

A court must construe the record in the light most favorable to the nonmoving party, and avoid "the temptation to decide which party's version of the facts is more likely true[,]" as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.* (citations omitted). "[A] party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771 (citation omitted).

### III. FOURTEENTH AMENDMENT CLAIM[7]

*A. Applicable Law*

"[T]he controlling inquiry for assessing a due process challenge to a pretrial detainee's medical care proceeds in two steps." *McCann v. Ogle Cnty., Ill.*, 909 F.3d 881, 886 (7th Cir. 2018); *see Miranda v. Cnty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018). The first step focuses on the intentionality of the individual defendant's conduct and asks "whether the medical defendants acted purposefully, knowingly, or perhaps even recklessly when they considered the consequences of their handling of plaintiff's case." *McCann*, 909 F.3d at 886 (citing *Miranda*, 900 F.3d at 353) (brackets omitted). At this stage, a plaintiff must plead more than negligence or even gross negligence. *Id.*; *Ferguson v. Cook Cnty. Corr. Facility/Cermak*, 836 F. App'x 438 (7th Cir. 2020) (a defendant's action must "rise above negligence and resemble something akin to reckless disregard" (quoting *Miranda*, 900 F.3d at 353)). The second step asks "whether the challenged conduct was objectively reasonable." *McCann*, 909 F.3d at 886 (citing *Miranda*, 900 F.3d at 354). "This standard requires courts to focus on the totality of facts and circumstances faced by the individual alleged to have provided inadequate medical care and to gauge objectively—without regard to any subjective belief held by the individual—whether the response was reasonable." *Id.*

---

[7] The parties agree that the Fourteenth Amendment standard, not the Eighth Amendment's, applies to this motion for summary judgment. (ECF 60 at 3; ECF 65 at 4). And because the Court only granted Plaintiff leave to proceed on a Fourteenth Amendment claim (ECF 4 at 3), the Court will not evaluate whether the Eighth Amendment applies. That said, courts "look to Eighth Amendment case law in addressing the claims of pretrial detainees, given that the protections of the Fourteenth Amendment's due process clause are at least as broad as those that the Eighth Amendment affords to convicted prisoners." *White v. Maga*, No. 1:14-CV-1914-LJM-MPB, 2017 WL 880286, at *4 (S.D. Ind. Mar. 6, 2017) (citing *Rice v. Corr. Med. Servs*, 675 F.3d 650, 664 (7th Cir. 2012)).

*B. Analysis*

As an initial matter, Defendant argues that Plaintiff has not presented any evidence that he had medical conditions related to kidney failure, pre-diabetes, brain bleeding, heart damage, nerve damage, or memory loss, or that those medical conditions required treatment. (ECF 60 at 6). Defendant also states that the decision regarding Plaintiff's medication rested with Dr. Lee, not Defendant, and thus, that he cannot be held liable for any constitutional violation resulting thereof. (*Id.* at 7). Plaintiff does not address these arguments in his seven-page response brief. Rather, the only issue Plaintiff addresses in his response brief is that he was unconstitutionally deprived of access to a CPAP machine and distilled water, which he alleges caused him headaches, chest pain, and breathing issues. (ECF 65 at 5-6). "[A]rguments raised in a motion for summary judgment that are not addressed by the nonmoving party are waived." *Hexagon Packaging Corp. v. Manny Gutterman & Assocs. Inc.*, 120 F. Supp. 2d 712, 718 (N.D. Ill. 2000) (citing *Laborer's Int'l. Union v. Caruso,* 197 F.3d 1195, 1197 (7th Cir. 1999)). Plaintiff has waived any argument regarding the lack of access to various medications and the lack of treatment relating to gout, kidney failure, pre-diabetes, brain bleeding, heart damage, nerve damage, and memory loss. Therefore, the only issue before the Court is whether Plaintiff's constitutional rights were violated when he was deprived of a CPAP machine and distilled water.

1. <u>There is no evidence that Plaintiff required the use of a CPAP machine for a serious medical condition or that he suffered harm from the deprivation of a CPAP machine.</u>

Plaintiff's claim suffers from a fatal deficiency—the record does not support that he has a medical need for the use of a CPAP machine or that Defendant was made aware of such need. The record shows that Dr. Lee approved the use of a CPAP machine upon Plaintiff's intake (ECF 65-1), but it does not establish that Defendant—or Dr. Lee—knew that Plaintiff had a medical need for the CPAP machine. Beyond Plaintiff's own representation to the medical staff that he

9

used a CPAP machine, there is no evidence of record showing that he was ever prescribed the use of a CPAP machine or that he has a condition, such as sleep apnea, that requires its use.[8] This, alone, is sufficient to grant Defendant's motion for summary judgment because there can be no claim for inadequate medical care under the Fourteenth Amendment without proof that a party has a serious medical need. *Gonzalez v. McHenry Cnty., Ill.*, 40 F.4th 824, 828 (7th Cir. 2022) (stating claim for inadequate medical care for pretrial detainees requires objective serious medical need); *Hamilton v. Gavin*, No. 22 C 02285, 2023 WL 2161663, at *6 (N.D. Ill. Feb. 22, 2023) ("[t]he denial of medical care for an 'objectively serious medical condition,'" is a necessary element to establish a violation of a pretrial detainee's Fourteenth Amendment rights (citing *Miranda*, 900 F.3d at 353)); *Beck v. Cnty. of Rock Island*, No. 20-CV-4266-JES, 2023 WL 7711101, at *9 (C.D. Ill. Nov. 15, 2023).[9]

More importantly, Plaintiff fails to show that he was harmed because of the deprivation of a CPAP machine and distilled water. Indeed, Plaintiff's contention that he suffered "unnecessary pain because of his lack of access to the CPAP machine in the form of harmful breathing, headaches, and chest pain" is unsubstantiated by any medical record. (*See* ECF 65 at 7 (citing ECF 60-4 at 16)); *Sanchez v. Jeffreys*, No. 19-CV-4143, 2023 WL 4236208, at *6 n.4 (N.D. Ill. June 28, 2023) (rejecting proposition that "a plaintiff's own testimony that he suffered

---

[8] "A CPAP machine delivers just enough air pressure to a mask to keep the upper airway passages open, preventing snoring and sleep apnea." *Continuous Positive Airway Pressure (CPAP)*, https://www.mayoclinic.org/diseases-conditions/sleep-apnea/multimedia/continuous-positive-airway-pressure-cpap/img-20007977 (last visited Feb. 27, 2024); *see Leiser v. Barter*, No. 19-CV-676, 2020 WL 3642316, at *1 (E.D. Wis. July 6, 2020) ("A Continuous Positive Airway Pressure ('CPAP') breathing machine helps people who have breathing difficulties while they sleep, especially pauses in breathing associated with sleep apnea." (citation omitted)).

[9] "A medical need qualifies as sufficiently serious when the condition 'has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention.'" *Perry v. Pfister*, No. 18 C 2447, 2021 WL 4355372, at *4 (N.D. Ill. Sept. 24, 2021) (citing *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)). In this regard, Dr. Lee's approval of Plaintiff's use of a CPAP machine or Plaintiff's own statements do not qualify as a diagnosis supporting the conclusion that Plaintiff has a serious medical need for a CPAP machine.

maladies . . . is a sufficient evidentiary basis to survive summary judgment" on Eighth Amendment deliberate indifference claim); *see also Johnson v. Tannan*, No. 19-C-645, 2020 WL 1689791, at *3 (E.D. Wis. Apr. 7, 2020) ("The plaintiff asserts that without his CPAP machine he could die in his sleep, but he offers no evidence from which a jury could reasonably reach that conclusion. The plaintiff points to a handful of medical records that show he was, at some unknown point, diagnosed with sleep apnea and was prescribed a CPAP machine, but there is no discussion in those records about the severity of his condition." (internal quotation marks and brackets omitted)). But "[t]o recover on [his] due process claim, [Plaintiff] ha[s] to present verifying medical evidence that the delay in medical care caused some degree of harm." *Miranda*, 900 F.3d at 347 (citation and internal quotation marks omitted).

To that end, Plaintiff points to the fact that Defendant referred Plaintiff to a pulmonologist before Plaintiff was due for a pulmonology follow-up, purportedly showing that Plaintiff experienced complications due to the lack of access to a CPAP machine. (ECF 65 at 3). But while Plaintiff may have suffered some harm, the evidence cited does not show any causation between the symptoms he experienced and the lack of access to a CPAP machine and distilled water. This lack of causation is all the more apparent given the fact that Plaintiff had other medical ailments—notably complications from COVID—unrelated to his use of a CPAP machine that may have supported the need to visit a pulmonologist. Without evidence showing that the harm he suffered was caused by the delay in providing the CPAP supplies, a jury cannot return a verdict in favor of Plaintiff. *See Sanchez*, 2023 WL 4236208, at *6 ("To the extent that Sanchez's argument is premised on a delay in care, we agree that Sanchez has failed to present medically verifiable evidence that a delay in medical care caused his injury. Sanchez has not disclosed expert testimony verifying that he was harmed by a contaminated CPAP machine or

11

the failure to obtain replacement supplies. Nor has he presented any medical records, treatment notes, or physician notes to support his claim. Sanchez was examined repeatedly by medical staff while he was housed in IDOC, and these records are devoid of any evidence that a delay in providing cleaning or replacement supplies for his CPAP machine caused him harm." (citations omitted)).

Therefore, there is neither evidence that Plaintiff suffered any damages from the deprivation of the CPAP machine nor that he had a medical need for it in the first place. *See Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) ("[S]ummary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." (citation and internal quotation marks omitted)).

   2. There is no evidence that Defendant was reckless in providing Plaintiff care.

Even if Plaintiff had a serious medical condition requiring the use of a CPAP machine, no reasonable jury could conclude that Defendant's actions rose to reckless conduct. The factual record regarding Plaintiff's issues with accessing his CPAP machine bears repeating. The undisputed facts reveal that upon Plaintiff's intake at the jail on or about July 16, 2021, Plaintiff informed the medical staff of his use of a CPAP machine. (ECF 65-1 ¶¶ 3, 22). Dr. Lee, the doctor who was on call that day, approved Plaintiff's use of a CPAP machine on July 17, 2021. (*Id.*). On or about that same day, Plaintiff's mother dropped off the CPAP machine at the jail, though Plaintiff refused to use it that night because he did not want to be housed alone. (*Id.* ¶ 5). The medical staff simultaneously directed the custodial staff to provide Plaintiff with nightly access to the CPAP machine. (*Id.* ¶¶ 22, 37).

In addition to those facts, the parties do not dispute that Defendant, who was often on call at other jail facilities, did not distribute the CPAP machine or the distilled water. (*Id.* ¶ 23). Rather, the custodial staff was responsible for making those supplies available to Plaintiff every night. (*Id.*). It is further undisputed that Defendant, who did not take part in Plaintiff's initial assessment, became familiar with Plaintiff's issues with accessing his CPAP machine and distilled water during a medical visit on November 15, 2021. (*Id.* ¶ 22). Upon learning of those issues, Defendant made an order—that day—reiterating that Plaintiff should receive access to his CPAP machine. (*Id.*). Prior to that, Plaintiff mainly complained of his gout, pulmonary, low back pain, and cough issues during his visits with Defendant (ECF 60-5), though Plaintiff filed inmate request forms asking to receive his CPAP machine and distilled water on July 25, August 15, and September 4, 2021. (ECF 65-1 ¶ 37; ECF 65-3 at 10-11; ECF 72 ¶ 5).

Based on those facts, no reasonable jury could conclude that Defendant was reckless when he provided Plaintiff medical care. It is undisputed that Defendant did not handle bringing the CPAP machine or providing Plaintiff distilled water at night. *See Sanchez*, 2023 WL 4236208, at *9 (observing that "[w]hile there is no evidence that Sanchez actually received the replacement equipment he requested from Dr. Young, Young testified that he had no control over supply or delivery issues" for the plaintiff's CPAP machine, and rejecting conclusion that defendant was deliberately indifferent). Defendant was one of at least three doctors who treated Plaintiff, and there is no dispute that he took prompt action to address Plaintiff's issues by entering an order to the custodial staff directing that Plaintiff be given a properly functioning CPAP machine once he learned of the access issues on November 15, 2021. Additionally, a holistic review of the medical record reveals that Defendant was continuously attentive to Plaintiff's other medical ailments, prescribing him medication, medical apparel, or medical

13

supplies whenever Plaintiff reported health problems, and referring Plaintiff to off-site specialists twice in six months. Plaintiff has not made the showing necessary to support the intentionality of Defendant's conduct. In other words, on the record presented, no reasonable jury could find that Defendant was reckless in providing care for Plaintiff.

Plaintiff states that there is an issue of material fact regarding the date Defendant became aware of Plaintiff's access issues with the CPAP machine and distilled water, as he alleges that Defendant could have become aware of this issue (1) as early as July 2021, when Plaintiff "first complained" about his issues in inmate request forms, (2) in October 2021, when a "jail commander," Lieutenant A.J. Pape, informed Plaintiff that he had been in communication with Quality Correctional Care, Defendant's employer, or (3) on October 14, 2021, when Plaintiff informed Defendant of the issue during an in-person visit. (ECF 65 at 2, 6; *see* ECF 65-3 at 21). But the Court is not persuaded that the cited evidence creates a genuine dispute of material fact.

As for the fact that Plaintiff filed inmate requests and communicated with Lieutenant Pape, the evidence suggests, at most, that other members of the jail's staff may have been aware of the CPAP access issue, but it does not show that Defendant himself was aware of Plaintiff's access issue. For example, the inmate request log shows that Plaintiff first complained of the CPAP access issue in July 2021, but there is no copy of the request nor does Plaintiff lay any foundation regarding whether Defendant received the form or whether the form was sent to Defendant. (*See* ECF 65-3 at 10); *Tannan*, 2020 WL 1689791, at *4 ("The plaintiff asserts that he told prison staff to tell health services that his [CPAP machine] mask did not fit properly, but he offers no proof from which a jury could conclude that his message reached Champeau or Dr. Tannan.").[10]

---

[10] A review of what appears to be a sample request form submitted sometime in August 2021 shows that the inmate request forms do not indicate to whom the requests are made or who receives those requests. (ECF 65-3 at 11).

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Ward v. City of Bloomington*, No. 13-1271, 2016 WL 9649877, at *4 (C.D. Ill. Aug. 31, 2016) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)) (stating "[a]n issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" (citation and internal quotation marks omitted)). "Simply showing that there is 'some metaphysical doubt as to the material facts' will not defeat a motion for summary judgment." *Id.* at *5 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). While the inmate request forms cast a "metaphysical doubt" about whether Defendant was appraised of Plaintiff's CPAP issues before November 15, 2021, the evidence cannot be said to create a *genuine* dispute of material fact.

The same conclusion applies to the October 22, 2021, memorandum sent from Lieutenant Pape. In the letter, Pape informs Plaintiff that he is writing in response to a letter sent by Plaintiff to Sheriff David Gladieux, that he has spoken with Quality Correctional Care, and that "they stated [Plaintiff is] being provided appropriate medical care . . . ." (ECF 65-3 at 21). As a result, Pape informed Plaintiff that he was "closing [Plaintiff's] investigation as unsubstantiated . . . ." (*Id.*). Again, the memorandum does no more than to cast a "metaphysical doubt" about whether Defendant became aware of Plaintiff's access issue with his CPAP machine through the October 22, 2021, memorandum. Plaintiff does not attempt to lay the foundation for the letter that he sent to Gladieux or the memorandum he received from Pape, nor does Plaintiff address the hearsay implications in the memorandum.[11] It is not apparent that Plaintiff was complaining of his lack

---

[11] The Court "must consider only evidence that can 'be presented in a form that would be admissible in evidence.'" *Neochloris, Inc. v. Emerson Process Mgmt. LLLP*, 140 F. Supp. 3d 763, 767-068 (N.D. Ill. 2015) (citing Fed. R. Civ. P. 56(c)(2)). In this regard, "[a] party may not rely upon inadmissible hearsay to oppose a motion for summary judgment." *Wilson v. Lear Seating Corp.*, 258 F. Supp. 3d 916, 919 (N.D. Ind. 2017) (citing *Gunville v. Walker*, 583

of access to a CPAP machine and distilled water in the letter he sent to Gladieux, nor that Pape spoke with Quality Correctional Care about the same. And to be sure, Plaintiff was complaining about several other medical conditions beyond his access to the CPAP machine throughout his stay at the jail. (*See* ECF 65-3 at 10). In sum, the memorandum does not support the conclusion that a genuine dispute of material facts exists.[12]

Regarding Plaintiff's testimony relating to his encounter with Defendant on October 14, 2021, Plaintiff cites to his notes taken after a visit between him and Defendant on that date. (ECF 65-3 at 20). In the note, Plaintiff relays that he informed Defendant of his issue receiving distilled water and that Defendant assured him that he would obtain distilled water for the CPAP machine instead of purified water. (*Id.*). Assuming Defendant became aware of Plaintiff's issues with the CPAP machine on that date, this evidence would still be insufficient to create a genuine dispute of *material* fact. That Defendant discovered the issues with Plaintiff's CPAP machine on October 14, 2021, as opposed to November 15, 2021, is not material because Plaintiff has not met his burden to show that he had a medical need for a CPAP machine or that the delay in receiving a CPAP machine caused him any harm.

In short, Plaintiff has not carried his burden to show that Defendant's actions were reckless, or that there is a genuine dispute of material fact warranting denial of summary judgment.

---

F.3d 979, 985 (7th Cir. 2009)). Here, Plaintiff offers the memorandum "to prove the truth of the matter asserted," making it an attempt to introduce inadmissible hearsay evidence. *See id.*; Fed. R. Evid. 801(c).

[12] To the extent the memorandum was written in response to Plaintiff's letter dated October 1, 2021, the same conclusion applies because, in this letter, Plaintiff only states that he wants to make Gladieux aware of his medical issues, that he is not receiving his medication, and that he has not received adequate care. (ECF 65-3 at 26). Nowhere in the letter does Plaintiff specifically address his issues with his access to a CPAP machine or distilled water.

## IV. CONCLUSION

For the foregoing reasons, the brief in opposition to the motion for summary judgment, statement of genuine disputes of material fact, and exhibits filed by Plaintiff without leave of Court on February 20, 2024 (ECF 68-70) are STRICKEN. The Court GRANTS Defendant's motion for summary judgment (ECF 59) and DIRECTS the Clerk to enter a judgment in favor of Defendant.

SO ORDERED.

Entered this 28th day of March 2024.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge